IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 13, 2005

## STATE OF TENNESSEE v. BOWMAN ROBERT RUSSELL

**Appeal from the Criminal Court for Loudon County**
**No. 10531      E. Eugene Eblen, Judge**

---

### No. E2005-01135-CCA-R3-CD - Filed January 19, 2006

---

The defendant, Bowman Robert Russell, appeals from his Loudon County Criminal Court jury verdict resulting in a conviction of driving while under the influence of an intoxicant (DUI), third offense.  The single issue on appeal is whether the convicting evidence is sufficient to support the conviction.  Because it is, we affirm the judgment of the criminal court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID G. HAYES, JJ., joined.

Joe H. Walker, District Public Defender; and Walter B. Johnson and Buddy Hathcock, Assistant District Public Defenders, for the Appellant, Bowman Robert Russell.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General; J. Scott McCluen, District Attorney General; and D. Roger Delp, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

At trial, Loudon County Deputy Sheriff Samuel M. Johnson, a 28-year veteran of the sheriff's department, testified that he had known the defendant for 40 years.  On March 17, 2001, at approximately 11:30 p.m., Deputy Johnson was called to the scene of an accident on Sunnyside Road, a public road in the Philadelphia area.  When he arrived at the scene, he saw a Subaru station wagon in the ditch.  The vehicle had left the curved roadway in dry conditions.

The defendant was present and told Deputy Johnson that he had driven the vehicle into the ditch.  Deputy Johnson testified that a strong odor of alcohol emanated from the defendant. The defendant "swayed" and could not stand upright, and Deputy Johnson administered the A-B-C recitation and walk-and-turn field sobriety tests, which the defendant could not perform.  The deputy testified that, following the tests, he formed an opinion that the defendant was intoxicated and was

close to "extreme" impairment. The deputy arrested the defendant, who was cooperative. The defendant consented to a blood alcohol test. The intoximeter test printout showed a blood-alcohol result of .21 percent.

On cross-examination, Deputy Johnson acknowledged that he did not see the defendant driving his vehicle, but he stated that when he asked the defendant what had happened, the defendant responded, "I drove in the ditch." The deputy did not ask whether anyone else had been driving the car and did not remember whether the defendant owned the Subaru. The deputy testified that the only way to move the vehicle from its position where he first saw it on March 17 was to pull it out with a wrecker. Otherwise, he said, "It wasn't going anywhere." He produced a tow-in slip which indicated that the keys were in the vehicle, although the slip did not indicate whether the keys were in the ignition switch.

On behalf of the defendant, his nephew, Shawn Russell, testified that on March 17, 2001, he had borrowed a Subaru station wagon belonging to his grandfather, the defendant's father, to drive to work. When Shawn Russell returned from work, the defendant asked him "to run him down to Coker's," a tavern in Philadelphia. The defendant had been drinking "a little bit, and he didn't want to be around the house around [Shawn Russell's] grandfather."

Shawn Russell drove the defendant to Coker's and told him he would pick him up around midnight. Mr. Russell then went home, and when he returned to Coker's as planned, the defendant resisted leaving. Ultimately, the defendant went with Mr. Russell but would not go without his beer. Mr. Russell testified that he and the tavern owner put the defendant into the car.

Mr. Russell drove via Sunnyside Road to take the defendant home, and when he encountered a car on his side of the road on a curve, he drove into a ditch. He was unable to drive the car out of the ditch. He got the intoxicated defendant out of the car and told him to wait while Mr. Russell walked to the house of Robert Russell, the defendant's son, to get a chain and a truck for pulling the Subaru out of the ditch. Mr. Russell testified that he threw the car keys into the floorboard and that the defendant would not have known that. Mr. Russell testified the walk to Robert Russell's house took about two and one-half hours. After he arrived, got equipped to pull the Subaru from the ditch, and returned to the scene, the Subaru was gone. Mr. Russell did not learn of the defendant's plight until later in the morning on March 18 when the defendant appeared at Mr. Russell's house and informed him that he had been in jail.

On cross-examination, Shawn Russell testified that he did not report the wreck because the Subaru was in good shape and would be operable when pulled from the ditch. He testified that he actually hid the keys beneath the Subaru's carpet. Mr. Russell acknowledged that he told no one except for the defendant's attorney that he had driven the Subaru on March 17-18.

Based upon the foregoing evidence, the jury convicted the defendant of DUI. On appeal, the defendant acknowledges that he was impaired on the evening of March 17-18, 2001. He claims that the "only issue is whether or not the Defendant was operating the motor vehicle."

When an accused challenges the sufficiency of the evidence, the appellate court considers the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979), regardless whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence, *State v. Winters*, 137 S.W.3d 641, 654-55 (Tenn. Crim. App. 2003), *perm. app. denied* (Tenn. 2004). The appellate court neither re-weighs the evidence nor substitutes its inferences for those drawn by the trier of fact. *Id*. at 655. The credibility of the witnesses, the weight and value of the evidence, and all other factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). The appellate court affords the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

Tennessee Code Annotated section 55-10-401 proscribes DUI. As pertinent to the present case, this Code section provides:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system . . . .

Tenn. Code Ann. § 55-10-401(a)(1) (2004).

In the present case, the deputy sheriff found the intoxicated defendant at the scene where his father's car had run off the roadway into a ditch. The deputy testified that the defendant told him that he had driven into the ditch. This testimony, when accredited by the trier of fact, is sufficient to establish that the defendant had driven the car to the scene. It was the jury's prerogative to resolve conflicts in the testimony, and the jury apparently rejected Shawn Russell's account of the trip from Coker's tavern. As mentioned above, it is not the role of the appellate court to make credibility determinations, and we may not replace the jury's inferences with those of our own.

For these reasons, the judgment of the criminal court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE